IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

OTHELLO THOMAS BYNDON,

      Plaintiff,

v.                                Civil Action No. 5:16CV103
                                                (STAMP)

GARRETT PUGH,
DOUG HOWELL and
THE CITY OF WHEELING,
a West Virginia
municipal corporation,

      Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS GARRETT PUGH
AND THE CITY OF WHEELING'S
MOTION FOR SUMMARY JUDGMENT**

I.  Background

The plaintiff, Othello Thomas Byndon ("Byndon"), originally filed this civil action in the Circuit Court of Ohio County, West Virginia. ECF No. 1-1 at 1. The defendants, Garret Pugh, Doug Howell, and the City of Wheeling, removed the civil action to this Court on June 27, 2016. ECF No. 1. On February 15, 2017, this Court approved the parties' stipulation of dismissal of defendant Doug Howell. ECF No. 19. Therefore, Garret Pugh ("Officer Pugh") and the City of Wheeling ("City") are the only remaining defendants.

This case arises out of the alleged actions of a police officer during a traffic stop in or around Wheeling, West Virginia. The parties agree that on June 23, 2014, the plaintiff was pulled

over while traveling on I-470. ECF Nos. 1-1 at 2-3 and 5 at 4-5. In the course of the traffic stop, the police officers searched the plaintiff's vehicle and forcibly removed the plaintiff from his vehicle, including the use of a taser. ECF No. 1-1 at 5-6. The plaintiff was arrested, but all charges were eventually dropped. Id. at 8-9. The plaintiff initially brought claims for deprivation of civil rights under 42 U.S.C. § 1983, intentional infliction of emotional distress ("IIED"), battery, assault, negligent retention and hiring, civil conspiracy, and negligent training and supervision. Id. at 12-18.

On May 14, 2018, the defendants filed a motion for summary judgment. ECF No. 24. The defendants argue that Officer Pugh, a Wheeling police officer, is immune from both the § 1983 claim and the state law claims, and that the plaintiff has failed to provide supporting evidence for the state law claims. ECF No. 25 at 5, 16, and 20-25. First, the defendants argue that Officer Pugh is immune for purposes of § 1983 because qualified immunity protects public officials for actions made in the course of their employment as long as they acted reasonably. Id. at 5. The defendants argue that throughout the traffic stop, arrest, and search of the vehicle, Officer Pugh's actions were reasonable and legal. Id. at 7-12.

Second, the defendants assert that Officer Pugh is immune from liability for the claims of IIED, battery, and assault. Id. at 16.

Under West Virginia Code § 29-12A-5(b), the Governmental Tort Claims and Insurance Reform Act:

> An employee of a political subdivision is immune from liability unless one of the following applies: (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5. The defendants contend that Officer Pugh was acting within the scope of his employment and that the plaintiff has offered no evidence that Officer Pugh acted maliciously. ECF No. 25 at 16. Thus, the defendants contend Officer Pugh is immune from liability. Id.

Third, the defendants argue that the City cannot be held liable for the claims of IIED, battery, and assault, because "[state] law does not allow political subdivisions to be held liable for 'intentional malfeasance' on the part of their employees." Id. at 17.

Fourth, the defendants argue that the plaintiff has provided no evidence to support the negligent retention and hiring claim; they contend this is merely a "boilerplate assertion" without any specific evidence of a negligent hiring decision. Id. at 17-19. The defendants similarly argue that the negligent training and supervision claim, the supervisor liability claims, the municipal liability claims, and the deliberate indifference claim likewise must fail because the plaintiff has either merely asserted the

claims without offering supporting evidence or failed to fully plead the claim. Id. at 20-25.

Fifth, the defendants argue that the civil conspiracy claim must fail because the plaintiffs have not alleged any facts to show that there was an agreement or understanding among the defendants. Id. at 19. They state that the plaintiff must allege that there was an "agreement of the minds" and that a state or federal official willfully participated in a joint activity. Id. at 19-20.

Finally, the defendants assert that the plaintiff's state constitutional claims are moot because the West Virginia Constitution does not contain any equivalent to 42 U.S.C. § 1983 that would allow the plaintiff to recover for money damages. Id. at 21.

The plaintiff filed a response in opposition to the defendants' motion for summary judgment. ECF No. 28. In it, the plaintiff first waives and concedes judgment on the claims of negligent retention and hiring, assault, negligent training and supervision, and deliberate indifference. Id. at 1. The plaintiff then argues that the remaining claims are inappropriate for summary judgment because they all rest on a disputed material fact—namely, whether Officer Pugh was within his jurisdictional limits when he observed the plaintiff's driving. Id. at 11. Along the portion of I-470 in question, the interstate passes through the city limits in such a way that the interstate is within the city limits of

Wheeling, then proceeds into city limits of the Village of Bethlehem, and then back into the city limits of Wheeling. ECF No. 28-1. Relying on the deposition of Officer Pugh, the plaintiff contends that there is a genuine issue of material fact as to whether Officer Pugh observed the plaintiff driving too closely to the vehicle ahead of him in Wheeling or Bethlehem. ECF No. 28 at 1-2. Because Officer Pugh's observation of plaintiff following too closely was the probable cause by which he pulled over the plaintiff, the plaintiff contends that the subsequent stop, search, and arrest were unlawful if this observation occurred outside his jurisdiction in Bethlehem. ECF No. 28 at 2.

The plaintiff then claims that Officer Pugh violated the plaintiff's clearly established rights under the First and Fourth Amendments because the stop was illegal and "a jury might reasonably conclude that [d]efendant Pugh summoned 'back up' because of Mr. Byndon and his front seat passenger [sic] spirited criticism of [d]efendant Pugh's stated basis for stopping him." Id. at 18-19. The plaintiff claims that this jurisdictional issue is one of material fact for the claims of civil conspiracy, IIED, battery, and the § 1983 claim. Id. at 21.

The defendants filed a reply. ECF No. 30. The defendants contend that "[t]here is no genuine issue of material fact as to where [d]efendant Pugh observed [p]laintiff's illegal driving." Id. at 1. Citing Officer Pugh's testimony, they maintain that

Officer Pugh first observed plaintiff's driving around mile marker 5.4 or 5.5, well within the city limits of Wheeling. Id. at 1-2. Thus, the defendants argue that the plaintiff's claims must fail because the plaintiff's argument is "entirely dependent upon his proposition that the traffic stop was illegal." Id. at 3. Next, they contend that even if the Court assumes that Officer Pugh did not realize he was outside the city limits when he activated the light bar on his police cruiser, it was reasonable for him to believe he was still within Wheeling's city limits. Id. at 5-6. The defendants therefore argue that qualified immunity applies because "[d]efendant Pugh's actions were reasonable under the circumstances." Id. at 6.

Further, the defendants contend that the plaintiff's First Amendment argument is "senseless" because rather than Officer Pugh calling for backup in response to plaintiff's criticism, the plaintiff himself called the police department to demand a supervisor. Id. at 6.

In addition to the jurisdictional issue, the defendants note that there are additional reasons the plaintiff's state law claims must be dismissed. First, the defendants argue that the civil conspiracy claim must fail as a matter of law because the plaintiff has still not alleged that any state official willfully participated in a joint activity. Id. at 8. Next, the IIED claim must fail because there is no evidence to establish any of the

elements of that claim. <u>Id.</u> at 9-10. Finally, the defendants

contend that the battery claim must fail because the plaintiff has

waived and conceded the assault claim, and that "the two claims go

hand in hand under the current facts." <u>Id.</u> at 10.

## II. <u>Applicable Law</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:
> (A) citing to particular parts of materials in the
> record, including depositions, documents, electronically
> stored information, affidavits or declarations,
> stipulations . . . admissions, interrogatory answers, or
> other materials; or
> (B) showing that the materials cited do not
> establish the absence or presence of a genuine dispute,
> or that an adverse party cannot produce admissible
> evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears

the initial burden of showing the absence of any genuine issues of

material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23

(1986). "The burden then shifts to the nonmoving party to come

forward with facts sufficient to create a triable issue of fact."

<u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir.

1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the

United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself

provides that a party opposing a properly supported motion for

summary judgment may not rest upon the mere allegations or denials

of his pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

III.  <u>Discussion</u>

A.  <u>42 U.S.C. § 1983 (Count I)</u>

   1.  <u>Plaintiff has failed to prove a claim of municipal liability under 42 U.S.C. § 1983 and Monell against the City of Wheeling, West Virginia</u>

   Pursuant to <u>Monell v. Dep't of Social Servs. Of City of New York</u>, 436 U.S. 658 (1978), § 1983 liability against a local government or municipality may arise when execution of the government's unconstitutional policy or custom causes plaintiff's injury.  See <u>Walker v. Prince George's Cnty.</u>, Md., 575 F.3d 426, 431 (4th Cir. 2009).  Specifically, the plaintiff must demonstrate the following: "(1) the municipality [has] actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) . . . failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom or usage."  <u>Randall v. Prince George's Cnty, Md.</u>, 302 F.3d 188, 201 (4th Cir. 2002) (internal quotation marks omitted).  "A custom is a practice that, although not formally approved by an appropriate decision maker is so widespread as to have the force of law.  <u>Bd. of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997).

   Plaintiff names the City of Wheeling as a defendant in his complaint.  ECF No. 1-1 at 1.  Additionally, he alleges that "in permitting [d]efendant[] to continue to function as [a] law enforcement officer[] in light of [his] prolific pattern of

constitutional violations and unlawful conduct under color of State law . . . of which the City and its supervisory and managerial agents had actual and extended knowledge, maliciously and intentionally exhibited deliberate indifference to a pattern of constitutional violations by [d]efendant[] Pugh . . . and other Officers of the City of Wheeling . . . thus encouraging, acquiescing in, and condoning their unlawful and unconstitutional conduct." <u>Id.</u> at 12-13. It is important to note that the plaintiff has failed to address the defendant's arguments in his response to the defendants' motion for summary judgment. Therefore, the Court will consider this argument as waived by the plaintiff. However, even if the Court were to consider this argument, it would fail. The plaintiff alleges no other incident of alleged police misconduct against the plaintiff and does not present any facts or evidence supporting his contention that the City's alleged failure to investigate, supervise, or discipline its police officers has resulted in a pattern of similar constitutional violations. His allegations fall far short of "persistent and widespread" misconduct constituting a "custom or usage with the force of law." <u>Carter v. Morris</u>, 164 F.3d 215, 217 (4th Cir. 1999).

    2. <u>Officer Pugh is entitled to qualified immunity as a matter of law</u>

    "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to

the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Winfield v. Bass</u>, 106 F.3d 525, 530 (4th Cir. 1997) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). In reviewing a qualified immunity defense, this Court must identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity. <u>Taylor v. Waters</u>, 81 F.3d 429, 433 (4th Cir. 1996). This Court must then consider "whether, at the time of the claimed violation, this right was clearly established and 'whether a reasonable person in the official's position would have known that his conduct would violate that right.'" <u>Winfield</u>, 106 F.3d at 530 (internal quotations omitted).

    a.  <u>Fourth Amendment Claims</u>

    (1)  <u>Jurisdictional Issue</u>

    (a)  <u>There is no genuine dispute of material fact as to whether Officer Pugh observed Mr. Byndon outside of his jurisdiction</u>

It is undisputed that the stop that led to Mr. Byndon's eventual arrest occurred in Wheeling, West Virginia, within the jurisdiction of Officer Pugh. As noted above, the relevant portion of I-470 passes through the city limits in a way that the interstate is within the city limits of Wheeling, then proceeds into the city limits of the Village of Bethlehem, and then back into the city limits of Wheeling. ECF No. 28-1. Mr. Byndon's

complaint states that he was driving on I-70 West in West Virginia. ECF No. 1-1 at 2. Officer Pugh was parked in one of two gravel turnarounds on I-70-the one at mile marker 5.4 or the one at mile marker 5.5. ECF No. 30-1. The plaintiff testified under oath that he first saw Officer Pugh's vehicle in the gravel turnaround in the middle of I-70. ECF No. 30 at 2. Both of those markers are located within Wheeling city limits. This admission tends to show that Officer Pugh observed plaintiff's alleged traffic infraction before entering the Village of Bethlehem boundaries.

　　　(b) <u>Even if Officer Pugh's observations that led to and eventual stop and Mr. Byndon's arrest were extra-jurisdictional, such conduct likely does not violate the Fourth Amendment</u>

　　　The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. U.S. Const. amend. IV. A seizure occurs when, under the totality of the circumstances, "a reasonable person would not feel free to leave or otherwise terminate the encounter with the police." <u>United States v. Cunningham</u>, 441 F. App'x 209 (4th Cir. 2011) (citing <u>United States v. Weaver</u>, 282 F.3d 302, 309 (4th Cir. 2002)).

　　　The United States Court of Appeals for the Fourth Circuit has addressed the issue of whether an officer's arrest of an individual based on an investigation that was conducted outside of his territorial jurisdiction rises to the level of a constitutional violation. Specifically, in <u>Neal v. Luedtke</u>, 713 F. App'x 177, 181

(2017), the Fourth Circuit upheld the trial court's determination that a city's law enforcement officers were entitled to qualified immunity for the search of the plaintiff's residence that led to his arrest and indictment and granted the defendant's summary judgment motion dismissing the plaintiff's § 1983 complaint alleging violations under the Fourth and Fourteenth Amendments to the United States Constitution. In analyzing this particular issue, the trial court had stated:

In <u>United States v. Atwell</u>, 470 F. Supp. 2d 554 (D. Md. 2007), this Court held that an officer's arrest of an individual outside of his territorial jurisdiction did not, by itself, rise to the level of a constitutional violation. <u>Atwell</u>, 470 F. Supp. 2d at 573 . . . [T]his Court in <u>Atwell</u> observed that "[t]he majority view, including decisions in the Courts of Appeal for the Seventh and Eighth Circuits, and more recent decisions in the Tenth Circuit, firmly rejects the notion that a lack of state statutory authority to make an arrest constitutes a <u>per se</u> violation of the Fourth Amendment." <u>Id.</u> (citing <u>United States v. Mikulski</u>, 317 F.3d 1228 (10th Cir. 2003); <u>United States v. Baker</u>, 16 F.3d 854, 856 n. 1 (8th Cir. 1994); <u>Pasiewicz v. Lake County Forest Preserve District</u>, 270 F.3d 520 (7th. Cir. 2001)). 'In order to properly assess the reasonableness of an extra-jurisdictional arrest, a court should consider a number of factors.' <u>Id.</u> The first and primary factor (factor 1) is the 'existence of probable cause.' <u>Id.</u> 'Other relevant factors . . . include the degree of the officer's compliance with state law (factor 2); the fact that officers were acting between political subdivisions of the same state (factor 3); the presence of exigent circumstances or the lack thereof (factor 4); the location where the offense or crime originated (factor 5); an officer's knowledge that he was without authority to make an arrest (factor 6); '[an officer's] blatant disregard of state law and the chain of command[;]' (factor 7); the motivation behind the state statute limiting territorial jurisdiction and whether it was designed to protect against unreasonable police behavior

(factor 8); and the state's interest in making a particular type of arrest (factor 9).' Id. at 574.

Neal, No. RDB-15-1030, 2016 WL 775406, at *6 (D. Md. Feb. 29, 2016).

Similar to Neal, here the plaintiff alleges that his Fourth Amendment rights have been violated when Officer Pugh allegedly observed Mr. Byndon commit a traffic infraction and seized the plaintiff outside Officer Pugh's lawful jurisdiction. Although Neal is an unpublished opinion, and therefore is not regarded as binding precedent,[1] this Court believes that the Atwell multi-factored test, applied in Neal, is an appropriate way to analyze this particular issue.

i) Factor 1

Traffic stops, like arrests, implicate the Fourth Amendment. U.S. v. Foreman, 369 F.3d 776 (4th Cir. 2004). A traffic stop is constitutionally reasonable when a police officer has "probable cause to believe that a traffic violation has occurred[,]" Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89

---

[1]Unpublished opinions are not precedential. Hogan v. Carter, 85 F.3 1113, 1118 (4th Cir. 1996); United States v. Ruhe, 191 F.3d 376, 392 (4th Cir. 1999). But see Collins v. Pond Creek Mining Co., 498 F. 3d 213, 219 (4th Cir. 2006)(holding that unpublished decisions do not have precedential value, but "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)); see also Fourth Circuit Local Rule 32.1 ("A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments or other written dispositions that have been . . . designated as 'unpublished' . . . or issued on or after January 1, 2007").

(1996), or "reasonable articulable suspicion that criminal activity may be afoot." <u>Terry v. Ohio</u>, 392, U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). More specifically, under this standard, an officer is justified to "detain an automobile and its occupants pending inquiry into a vehicular violation." <u>United States v. Palmer</u>, 820 F.3d 640, 648 (citing <u>Arizona v. Johnson</u>, 555 U.S. 323, 327, 129 S. Ct. 781) (internal quotation marks omitted). A stop may also be justified when a driver fails to comply with traffic laws. <u>Id.</u> (citing <u>United States v. Green</u>, 740 F.3d 275, 275, 279 n.1 (4th Cir. 2014). When assessing whether there is probable cause or articulable suspicion, the Court does not inquire as to the officer's subjective intent for stopping a vehicle. <u>United States v. Branch</u>, 537 F.3d 328, 340 (4th Cir. 2008). Rather, the question is "viewed objectively." <u>Whren v. United States</u>, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). "Reasonable suspicion is a 'commonsense, nontechnical' standard that relies on the judgment of experienced law enforcement officers, 'not legal technicians.'" <u>Id.</u> (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L.Ed.2d 911 (1996)).

In this case, the Court finds that Officer Pugh had both probable cause to believe that plaintiff Byndon had committed a traffic violation as well as a constitutionally reasonable suspicion that a traffic violation (driving too closely) was taking

place.  First, plaintiff Byndon does not deny that Officer Pugh had reasonable suspicion to pull him over; rather, he contends that there is a genuine issue of material fact as to whether Officer Pugh had "probable cause to pull over plaintiff within the jurisdictional limits of the city."  ECF No. 28 at 1-2.  Second, Officer Pugh testified that he saw Byndon was "following too closely," in violation of West Virginia Code § 17C-7-10(a).  ECF No. 25 at 7-8.  This provided Officer Pugh with probable cause to believe that Byndon had violated the West Virginia traffic code.  As the Fourth Circuit has recognized, pulling over a vehicle and citing a driver for such a traffic violation is permissible under the Fourth Amendment.  See United States v. Mimms, 155 F.3d 562 (4th Cir. 1998); Pennsylvania v. Mimms, 434 U.S. 106, 107 98 S. Ct. 330, 331, 54 L.Ed.2d 331 (1977) (concluding that an officer's practice of asking motorists to step out of a vehicle after a lawful stop to be de minimis and "only a mere inconvenience against "legitimate concerns for [] officer[] safety" since the driver is being asked to "expose to view very little more than is already exposed[,] [t]he police have already decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it").  This Court thus finds that there was an objectively reasonable basis for stopping Mr. Byndon's vehicle.

Analysis under the second factor, the degree of compliance with State law, also suggests that no constitutional violation occurred. It is undisputed that under West Virginia § 17C-7-10(a), officers have authority to ensure that an operator of a motor vehicle does not follow another vehicle more closely than reasonably necessary. However, "[i]n order to arrest for the violation of municipal ordinances and as to all matters arising within the corporate limits and coming within the scope of his official duties, the powers of any chief, policeman or sergeant shall extend anywhere within the county or counties in which the municipality is located, and any such chief, policeman or sergeant shall have the same authority of pursuit and arrest beyond his normal jurisdiction as has a sheriff."  W. Va. Code § 8-14-3.

While it may or may not be true that Officer Pugh violated West Virginia Code § 8-1403, violation of that law does not necessarily mean that Officer Pugh has violated the plaintiff's federal constitutional rights.  While the Fourth Circuit has provided general guidance, the Court has yet to address this specific issue, namely-whether an officer violates the Fourth Amendment when he observes a traffic violation outside of his jurisdiction, unauthorized by state law, and then conducts a stop and arrest based on that extra-jurisdictional conduct.  However, other Circuit Courts of Appeal have provided some guidance.

The United States Court of Appeals for the Tenth Circuit has addressed a similar issue finding that compliance with state law may be relevant for analyzing reasonableness under a Fourth Amendment analysis, but such a violation does not mean there is a per se violation of the plaintiff's constitutional rights. Swanson v. Town of Mountain View, Colo., 577 F.3d 1196, 1203 (10th Cir. 2009). Specifically, the Court in Swanson concluded that a traffic stop outside the officers' home jurisdiction, even if unauthorized by state law, does not constitute an unlawful seizure under the Fourth Amendment. The Court also found that a reasonable police officer would not have known that the extra-jurisdictional, but within the same state, traffic stop constituted clearly established Fourth Amendment law, when no dispute exists that the officer observed the traffic violation before effectuating the stop.

Moreover, the United States Court of Appeals for the Seventh Circuit has addressed a similar issue when the plaintiff brought a § 1983 action against a county forest preserve district, individual district police officers, and witnesses, asserting, inter alia, claims based on the Fourth and Fourteenth Amendments. The Court found that despite the forest preserve officers' violation of state statutes governing their jurisdiction with respect to arrests outside a preserve, the arrest itself does not give rise to a § 1983 action for violation of the Fourth Amendment, without a showing that it was made in "blatant disregard of state law and

thus unreasonable; federal government was not enforcer of state law." <u>Pasiewicz v. Lake County Forest Preserve</u>, 270 F.3d 520, 527 (7th Cir. 2001).

Also, although the case is factually different from the one at hand, the Fourth Circuit has previously indicated that when analyzing claims brought under § 1983, "the problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under 'color of any law.'" <u>Street v. Surdyka</u>, 492 F.2d 368, 371 (4th Cir. 1974) (citing <u>Screws v. United States</u>, 325 U.S. 91, 65 S. Ct. 1031, 89 L.Ed. 1495 (1945)). Importantly, the Court noted that:

> There is significant distinction between police action which is unlawful because violative of constitutional provisions and police action which merely fails to accord with statute, rule or some other nonconstitutional mandate. The protection against arrest without probable cause, as well as that against unreasonable searches and seizures, stems directly from the Fourth Amendment. There is no such constitutional prohibition against arrests for investigation where probable cause exists. Certainly not every official impropriety gives rise to a finding that due process has been denied.

<u>Id.</u>

Here, there is no indication that Officer Pugh was acting in blatant disregard of his authorized jurisdiction. Further in light of the other factors, especially factor 1, the weight falls in favor of the reasonableness of the arrest, regardless of whether or not Officer Pugh first saw the alleged traffic infraction in

Wheeling or Bethlehem, and regardless of where Officer Pugh seized Plaintiff Byndon.

iii) <u>Factor 3</u>

Analysis under the third factor also suggests no constitutional violation because Officer Pugh was acting between two political subdivisions within the State of West Virginia. In fact, there is no dispute that Officer Pugh stopped and arrested plaintiff Byndon within the State; rather, the main contention is with respect to whether Officer Pugh was within his jurisdictional limits when he observed plaintiff's alleged traffic infraction that provided justification for Officer Pugh to stop plaintiff Byndon's vehicle. Even if Officer Pugh acted extra-territorily, "[c]ourts have viewed as mitigating if the law enforcement officer acting extra-territorily was simply from another political subdivision within the same state." <u>Neal</u>, No. RDB-15-1030, 2016 WL 775406, at *6 (D. Md. Feb. 29, 2016) (citing <u>Atwell</u>, 470 F. Supp. 2d at 576 n.34).

iv) <u>Remaining Factors</u>

Additionally, analysis under factors 4, 5, 6, 7, 8, and 9 weigh in favor of the reasonableness of the arrest. As mentioned above, there is sufficient evidence demonstrating that Officer Pugh witnessed the alleged traffic infraction within his jurisdiction (factor 5). Moreover, there is no evidence to indicate that Officer Pugh intended to act outside of his territorial

jurisdiction or that he was in blatant disregard of the law (factor 7). Lastly, Officer Pugh saw what seemed to be an emergency situation with the defendant allegedly traveling dangerously close to another vehicle (ECF No. 28 at 9) (factor 4), in violation of the purpose behind the creation of West Virginia Code § 17C-7-10(a) (factor 9).

All these factors speak to the reasonableness of Officer Pugh's conduct. Therefore, Officer Pugh is entitled to qualified immunity as a matter of law.

3. <u>Even assuming Officer Pugh committed a constitutional violation, such violation was not clearly established at the time of the stop and arrest</u>

As a starting point, the plaintiff relies on basic Fourth Amendment search and seizure jurisprudence. The plaintiff also asserts that Officer Pugh, by observing plaintiff's wrongful driving outside of his jurisdictional limits and effectuating a stop based on those observations, violated West Virginia Code § 8-14-3 that defines the powers of a municipal officer. ECF No. 28 at 1-11. However, without addressing whether Officer Pugh violated West Virginia law, such a violation does not necessarily mean the defendants violated the plaintiff's federal constitutional rights. Moreover, the plaintiff has failed to provide precedent to support his conclusion that the officers have committed a constitutional violation. As indicated, the Fourth Circuit holds that "there is significant distinction between police action which

is unlawful because violative of constitutional provisions and police action which merely fails to accord with statute, rule or some other nonconstitutional mandate." <u>Surdyka</u>, 492 F.2d at 371. In the context of traffic stops, <u>Atwell</u> demonstrates that compliance with state law is only one factor that may be relevant in the overall analysis. In short, relevant precedent does not establish that a traffic stop that was based on observing an alleged traffic infraction outside an officer's home jurisdiction, even if unauthorized by state law, constitutes an unlawful seizure under the Fourth Amendment. A reasonable police officer would not have known at the time of this incident that extra-jurisdictional, but within the same state, observations that establish probable cause or reasonable suspicion to stop a vehicle would constitute a violation of clearly established Fourth Amendment law.

(2) <u>Officer Pugh lawfully arrested plaintiff Byndon</u>

The second issue is whether Officer Pugh had probable cause to arrest plaintiff Byndon. Probable cause is determined by a "totality-of-the circumstances" approach. <u>Smith v. Munday</u>, 848 F.3d 248, 253 (4th Cir. 2017) (citing <u>Illinois v. Gates</u>, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)). Probable cause requires greater than "bare suspicion," and less than "evidence necessary to convict." <u>Id.</u> (citing <u>United States v. Gray</u>, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday

life." Id. (citing <u>United States v. Gray</u>, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks omitted)). The main question is whether based on "known facts and circumstances," and "a common sense determination, there is a fair probability that evidence of a crime will be found." <u>Neal v. Luedtke</u>, No. RDB-15-1030, 2016 WL 775406, at *6 (D. Md. Feb. 29, 2016).

Here, the defendants have provided dashboard and body camera videos establishing that the plaintiff incorrectly accuses Officer Pugh of being a fake police officer despite facts demonstrating that the stop occurred during the daytime and that the officer was in full uniform with standard issue tactical gear, and his vehicle was a fully marked cruiser with a K9 unit. ECF Nos. 25-10 at 1-5 and 25-11 at 11-12. Moreover, the evidence demonstrates that the plaintiff repeatedly refused to produce his license, registration, and proof of insurance. He also refused to step out of his vehicle. ECF No. 25-11 at 7-8. For these reasons, the defendant had probable cause to arrest the plaintiff for obstruction of a law enforcement officer.

### (3) <u>Excessive force</u>

The next issue is whether Officer Pugh improperly used excessive force in conducting the arrest in violation of the Fourth Amendment of the United States Constitution. The plaintiff asserts that "any force used during an unlawful stop and arrest is <u>per se</u>

excessive." ECF No. 28 at 15 (emphasis omitted). This argument fails for the following reasons.

The Fourth Amendment prohibits police officers from using excessive force in seizing a citizen. Smith v. Murphy, 634 F. App'x 914, 916 (4th Cir. 2015). "A court determines whether an officer has used excessive force to effect a seizure based on a standard of 'objective reasonableness.'" Jones v. Buchanan, 325 F.3d 520, 524 (4th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989)). The Court should pay careful attention to the facts of each case, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Smith, 634 F. App'x at 916. Specifically, tasing a suspect who was acting belligerently and is refusing to provide his license and registration has been found to not constitute excessive force. Draper v. Reynolds, 369 F.3d 1270, 1277-1278 (11th Cir. 2004); Hagans v. Franklin Cty. Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012).

In this case, viewing the facts in the light most favorable to plaintiff Byndon, no objectively reasonable officer could conclude that Officer Pugh's conduct constituted excessive force. Regarding the first factor, Officer Pugh allegedly witnessed plaintiff Byndon violate a traffic law and after lawfully stopping plaintiff

24

Byndon's vehicle, plaintiff Byndon failed to provide any standard and requisite information to Officer Pugh while actively resisting his orders.  The second factor likewise weighs in favor of Officer Pugh, as Officer Pugh had reason to believe that plaintiff Byndon could react violently and be confrontational.  As for the third factor, resistance from plaintiff Byndon was not merely instinctive, but rather the evidence demonstrates that Officer Pugh attempted to reason with plaintiff Byndon and that plaintiff Byndon continuously refused to cooperate and retaliated, only feet away from a highway.

(b)  <u>First Amendment Claim</u>

The plaintiff asserts, for the first time in his response to the defendants' motion for summary judgment, that "a jury might reasonably conclude that [d]efendant Pugh summoned 'back up' because of plaintiff Byndon and his front seat passenger spirited criticism of [d]efendant Pugh's stated basis for stopping him." ECF No. 28 at 19.

The First Amendment does not provide a right to be free from a retaliatory arrest that is supported by probable cause.  <u>Reichle v. Howards</u>, 566 U.S. 658, 665, 132 S. Ct. 2088, 2094, 182 L.Ed.2d 985 (2012).  The Supreme Court has held that the "right allegedly violated must be established, 'not as a broad general proposition,' . . . but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official."  <u>Id.</u> (citing <u>Hartman v.</u>

<u>Moore</u>, 547 U.S. 250, 256 126 S. Ct. 1695, 164 L.Ed.2d 441 (2006);
<u>Brosseau v. Haugen</u>, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L.Ed.2d
583 (2004) (per curiam)).

Again, as noted above, the defendants have provided evidence
establishing that the plaintiff falsely accused Officer Pugh of
being a fake police officer despite facts demonstrating that the
stop occurred during the daytime and that the officer was in full
uniform with standard issue tactical gear, and his vehicle was a
fully marked cruiser with a K9 unit. Moreover, the evidence
demonstrates that the plaintiff repeatedly refused to produce his
license, registration, and proof of insurance. He also refused to
step out of his vehicle after Officer Pugh lawfully requested him
to do so. For these reasons, the defendant had probable cause to
arrest the plaintiff for obstruction of a law enforcement officer.
Therefore, this claim cannot be the reason Officer Pugh is not
entitled to qualified immunity. Moreover, the plaintiff has failed
to allege that a particular right has been violated; rather, the
defendant simply makes broad general propositions without
identifying any particular right.

(c) <u>Right to interstate travel and moving interstate</u>

The plaintiff, for the first time during this litigation, has
made an argument based on the constitutionally protected right of
interstate travel and movement, solely alleging that this right was
"impaired by [d]efendant's actions unlawfully stopping him." ECF

No. 28 at 20-21. This Court finds this argument to be without merit. The constitutional right to travel is not a right to travel in any manner, without regulation, and does not provide travelers a right to ignore state traffic laws. <u>United States v. Hare</u>, 308 F. Supp. 2d 955 (D. Neb. 2004). Therefore, it cannot serve as a reason why Officer Pugh would not be entitled to qualified immunity.

## B. <u>Tort of Outrage/Intentional Infliction of Emotional Distress (Count II)</u>

Count II of the complaint raises a claim of intentional infliction of emotional distress. This claim is insufficiently supported by facts and must be dismissed. The only support that plaintiff Byndon provides for this claim in opposing summary judgment is in a brief paragraph which states that the defendants' contention is "mere <u>ipse dixit</u> argument, not a factual one. Certainly, initiating a false arrest and battering an arrestee can rise to the level of outrageous conduct." ECF No. 28 at 22-23. However, the plaintiff fails to provide any facts to support the claim that emotional distress actually occurred.

Intentional infliction of emotional distress claims require that a plaintiff provide evidence that he suffered "severe emotional distress" in order to be successful. <u>Marlin v. Bill Rich Constr.</u>, 198 W. Va. 635, 652 (1996) ("A claim for emotional distress without an accompanying physical injury can only be

successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious and upon a showing that the emotional distress is undoubtedly real and serious."). Plaintiff Byndon has not even attempted to make such a factual showing in this case. Simply stating that "initiating a false arrest and battering an arrestee can rise to the level of outrageous conduct" is insufficient and is not supported by any facts. See Price v. City of Charlotte, 93 F. 3d 1241 (4th Cir. 1996) (cert. denied) (reversing award for emotional distress because the evidence did not show any demonstrable emotional injury outside of the plaintiff's own testimony).

Further, this Court finds that, as a matter of law, Officer Pugh's actions in this case did not rise to the high level of "outrageousness" which is "more than unreasonable, unkind or unfair, [but which] truly offend[s] community notions of acceptable conduct" that is required to support this claim. Philyaw v. E. Associated Coal Corp., 219 W. Va. 252, 258 (2006).

Furthermore, even if the plaintiff properly alleged a claim for intentional infliction of emotional distress, Officer Pugh would be immune from liability due to West Virginia Code § 29-12A-5(b) of the Governmental Tort Claims and Insurance Reform Act. The plaintiff has not provided any evidence that Officer Pugh acted maliciously and there is no dispute that Officer Pugh was

acting within the scope of his employment or official responsibilities at the time of the incident. Therefore, Officer Pugh is immune from liability.

Moreover, this intentional tort claim against the City should be dismissed since the law does not allow political subdivisions to be held liable for "intentional malfeasance" on the part of their employees. Poe v. Town of Gilbert, 2012 U.S. Dist. LEXIS 125602 (S.D. W. Va. 2012) (citing Mallamo v. Town of Rivesville, 197 W. Va. 616, 477 S.E.2d 525, 533-34 (1996)). Thus, summary judgment must be granted to the defendants on this count.

Lastly, as this claim is based solely on West Virginia law, and as this Court has determined that plaintiff Byndon's federal claim must be dismissed, this Court declines to exercise supplemental jurisdiction over the state law claim, pursuant to 28 U.S.C. § 1367(c)(3), and this claim will be dismissed.

C.  Battery (Count III)

In West Virginia, the tort of battery consists of (a) an action "intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004) (quoting Restatement (Second) of Torts, § 13 (1965)). Further, that court has found that "[i]n order to be liable for a battery, an actor must act with

the intention of causing a harmful or offensive contact with a person." Id. (citation omitted).

Here, the plaintiff has failed to explain why the elements of battery have been met in its response to defendants' motion for summary judgment. However, even if the plaintiff did argue that Officer Pugh committed a battery against plaintiff Byndon, it would fail. Although plaintiff Byndon did indeed engage in physical contact with plaintiff Byndon, the contact with plaintiff Byndon was not unlawful and there is no evidence that plaintiff Byndon was actually harmed by the contact. Further, such contact was not offensive as Officer Pugh did not use excessive force in this action. Thus, this claim must also fail. Moreover, the plaintiff has already waived his claim for assault, and since battery and assault go hand in hand, the plaintiff's waiver of his assault claim supports dismissal of the battery claim.

Also, as mentioned under the analysis for Count II, even if the plaintiff properly alleged a claim for battery, Officer Pugh would be immune from liability due to West Virginia Code § 29-12A-5(b) of the Governmental Tort Claims and Insurance Reform Act. The plaintiff has not provided any evidence that Officer Pugh acted maliciously and there is no dispute that Officer Pugh was acting within the scope of his employment or official responsibilities at the time of the incident. Therefore, Officer Pugh is immune from liability.

Lastly, as this claim is based solely on West Virginia law, and as this Court has determined that plaintiff Byndon's federal claim must be dismissed, this Court declines to exercise supplemental jurisdiction over the state law claim, pursuant to 28 U.S.C. § 1367(c)(3), and this claim will be dismissed.

D.  Civil Conspiracy (Count IV)

To establish a civil conspiracy, a plaintiff must prove that two or more persons were acting jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the plaintiff's deprivation of a constitutional right.  Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416 (4th Cir. 1996).  A plaintiff has a "weighty burden to establish a civil rights conspiracy."  Id. at 421.  While the plaintiff does not need to "produce direct evidence of a meeting of the minds, [he] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Id.

This Court finds that the plaintiff did not allege any facts leading to an inference of a conspiracy.  Speculation and conjecture are not sufficient to state a claim for conspiracy. Puglise v. Cobb County, 4 F. Supp. 2d 1172, 1181 (N.D. Ga. 1998). Thus, the claim must be dismissed.

Lastly, as this claim is based solely on West Virginia law, and as this Court has determined that plaintiff Byndon's federal

claim must be dismissed, this Court declines to exercise supplemental jurisdiction over the state law claim, pursuant to 28 U.S.C. § 1367(c)(3), and this claim will be dismissed.

E.  Waived Claims

The plaintiff has waived and conceded judgment on Count V (Negligent Retention and Hiring), Count IV (Assault), Count VII (Negligent Training and Supervision) and Count VIII (Deliberate Indifference).  ECF No. 28 at 1.  Therefore, this Court also dismisses these claims.

IV.  Conclusion

For the reasons set forth above, the defendants' motion for summary judgment (ECF No. 24) is GRANTED.  It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    October 4, 2018

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE